**UNITED STATES of America**

v.

**J. Adams BRUCE.**

**No. 6599-Cr.-T.**

United States District Court
S. D. Florida,
Tampa Division.

Sept. 24, 1962.

Rehearing Denied Oct. 4, 1962.

John R. Parkhill, Tampa, Fla., for defendant.

Edward F. Boardman, U. S. Atty., and Arnold D. Levine, Asst. U. S. Atty., for Government.

YOUNG, District Judge.

The Defendant, J. Adams Bruce, was found guilty by a jury of both counts of an Indictment charging him (1) with knowingly and fraudulently concealing assets from the Receiver of a bankrupt estate, and (2) with having concealed and transferred for his own use certain of such assets in contemplation of the filing of an involuntary petition in bankruptcy and with the intent to defeat the Bankruptcy Law.

After verdict, the Defendant filed a timely Motion for New Trial and renewed his earlier Motion for Judgment of Acquittal. A hearing was held for oral arguments on these motions after which this Court took the motions under advisement. In its review of the file in consideration of the motions, this Court discovered that Government's Exhibit 62 contained what is apparently an interoffice memorandum of the Internal Revenue Service. Exhibit 62 was the original corporate tax return for Bruce's Juices, Incorporated, for the period from Sep-

tember 1, 1950 through August 31, 1951. Bruce's Juices, Incorporated, was one of the corporations shown by the evidence to have been dominated and controlled by the Defendant and the activities of that corporation figured prominently in the trial of this case.

At the time of the introduction of Government's Exhibit 62 no objection was made thereto by Defendant's counsel. Earlier in the trial Government counsel had offered Government's Exhibit 58, which was an exemplified copy of Exhibit 62. Government's Exhibit 58 was admitted over the objections of Defendant's counsel but immediately subsequent to its admission it developed that the exemplified copy (being a photostatic copy) did not show that certain figures were printed in red ink, thereby signifying a loss, as appeared on the original. At that time, therefore, Government counsel stated that:

> " * * * I have the original return and it will be clearer."

Shortly thereafter Government counsel produced the aforesaid original of the corporate tax return and offered it as Government's Exhibit 62. At that time the following colloquy took place:

> "Government counsel: I'd like to offer Government's Exhibit No. 62, this being the original return that is already in evidence in 58, so the point of whether it be a loss or a profit is clearly reflected therein.
>
> "Defendant's counsel: We have no objection to it.
>
> "The Court: Without objection, it is admitted as Government's Exhibit 62."

During the course of the trial Government counsel attempted to offer evidence that the Defendant, within a year or so prior to the bankruptcy involved in this case, had fraudulently issued warehouse receipts for fruit juice which did not exist. The Government sought to submit this evidence to the jury for the purpose of establishing Defendant's alleged felonious intent in the doing of those acts which the Government claims herein violated the bankruptcy laws. This Court excluded all evidence relating to the alleged *fraudulent* character of the issuance of such warehouse receipts but did permit the Government to show that prior to and at the time of the filing of the involuntary petition in bankruptcy, the inventories on hand of one of the Defendant's companies, Bruce's Juices, Incorporated, were less than they were supposed to be according to then issued warehouse receipts. This evidence was admitted for the sole purpose of showing the extent of the financial plight of Defendant's company and his personal knowledge thereof.

Despite the limitations imposed by this Court, Government counsel in his argument to the jury referred to the inventory shortages in such a way as to imply that they resulted from fraud upon the part of the Defendant. In reference to certain promissory notes supposed to have been secured by warehouse receipts issued by Bruce's Juices, Incorporated, the Assistant United States Attorney said:

> " * * * Mr. Parker related that Mr. Bruce was continuously apprised and advised of this inventory. And what do we find from the testimony of Mr. Hurst? That there were thousands upon thousands of cases of orange juice and other citrus products that just weren't there. * * * The bank never realized any money on the notes or the security behind the notes because it wasn't there, but Mr. Bruce said it was there. * * * He was diverting funds all over. He was always short. Read the correspondence from the bank. I think it will show you. I think it is clear. I guess we can go on ad infinitum in that regard. * * *
>
> "In addition thereto you will recall Mr. Gilfallen stated he came down here and couldn't get the merchandise. He didn't just leave it at that. He went and he saw J. Adams Bruce. He said, 'Where is it? 64,000 cases of orange juice.'

Well, there was some little quibble about, 'Well, it's not 64–, it's 58,000.' And Gilfallen said, 'So what? We will forget about 6000 cases. Where is the 58,000?' And Bruce stood mute. He didn't have it. They had paid for it. Where is the merchandise? They only paid on the representations in these letters; no other reason."

■ Objection of defense counsel to the foregoing argument was sustained. While the objectionable argument was cited by Defendant's counsel as a ground for new trial, this Court doubts that, standing alone, under all the circumstances in this case, it would have justified a new trial, but the argument did not stand alone; the memorandum of the Internal Revenue Agent contained in Exhibit 62 was directly concerned with the subject of Government's counsel's remarks to the jury and appeared to support them. The memorandum was a one-page sheet inserted in the middle of the return and apparently all concerned with its introduction were without knowledge of its existence therein. The relevant and material portions of that memorandum are hereinafter quoted:

"Lee Terminal & Warehouse Corp. was recently found to have issued some $500,000.00 in fictitious bonded warehouse receipts for citrus products which had been purchased by third parties who could not obtain delivery of the products covered by the receipts. Such fictitious receipts were traced back to a bonded warehouseman named R. L. Parker who was also an officer in Bruce's Juices, Inc. and other corporations owned by J. Adams Bruce. Bruce had either sold the receipts or obtained loans on them and the banks from which the loans were obtained had sold them. Attorneys for Lee Terminal then instituted proceedings to have Bruce's companies placed in temporary receivership pending examination of their affairs to determine if there was a possible recovery of the funds obtained from the fictitious receipts. At the present time, the receiver so appointed is in possession of all books and records of the various Bruce companies and an attempt is being made to have the bonding company for Lee Terminal bear the expense or at least a major part of the expense of having an audit made of the Bruce companies."

■ A serious question arises as to whether the jury viewed this portion of the Exhibit and the effect of it on the jury. Unquestionably the submission of the memorandum as a part of Exhibit 62 was erroneous. Under the circumstances, the Defendant should not be held to his counsel's waiver of objection to the admission of Government's Exhibit 62 for it is obvious that counsel for both parties were of the belief that Exhibit 62 was merely the original of Government's Exhibit 58 and therefore there was no reason to suppose that it contained the objectionable memorandum.

■ No lack of sincerity or good faith on the part of Government counsel is charged; to the contrary, it is apparent he was just as unaware of the presence of the memorandum as everyone else. But, neither the good faith of Government counsel nor the mutual mistake of both counsel can make, under these circumstances, submission of the memorandum to the jury any less error. Since all of the exhibits were taken by the jury to the jury room when they retired to consider the case and since they kept the exhibits throughout their deliberations, there is no reason to assume that they did not see or did not consider the objectionable memorandum.

Was the error harmless? The case of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557, sets forth the test for "harmless error":

"To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. * * * In criminal

causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting. * * *

"This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. * * * But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

I cannot say with fair assurance that the jury's verdict was not substantially swayed by the error hereinabove set forth. (See also the recent opinion and decision in the case of J. Monroe Dunn v. United States, decided September 12, 1962, by the United States Court of Appeals for the Fifth Circuit, 307 F.2d 883). The Motion for New Trial should be granted.

■ However, I find there was competent evidence upon which the jury could have returned a verdict of guilty as to each of the counts so the Motion for Judgment of Acquittal should be denied.

So, upon consideration, it is

Ordered and adjudged that the Motion for Judgment of Acquittal as to each of the counts be and is hereby denied; and it is further

Ordered and adjudged that the Motion for New Trial as to both Counts 1 and 2 be and is hereby granted.

ORDER DENYING REHEARING

This cause comes on before this Court on the Motion of the United States of America for a rehearing on the Order of this Court on September 24, 1962, granting Defendant's Motion for a new trial. In support of its Motion the Government has filed with the Court a Memorandum of Law citing cases wherein the Court has inquired of jurors as to whether or not they considered certain circumstances not in evidence and, if so, the effect of such consideration by the jurors on the verdict. Based on these cases Government counsel contends that this Court should grant a rehearing on its Order granting Defendant a new trial and inquire of each juror in this case whether or not he considered the objectionable memorandum which was a part of Government's Exhibit 62 and, if so, the effect of such consideration on his deliberations in arriving at a verdict.

■ Subsequent to the discovery of the objectionable memorandum in Government's Exhibit 62, Government counsel moved this Court for the very same interrogation of the jury as is now sought in Government's motion for rehearing. At that time Memoranda of Law were submitted to this Court, this Court held

a hearing for oral arguments on this point and after consideration thereof this Court denied the Government's Motion that the jurors be questioned as requested. While the cases cited by the Government are authority for interrogation of jurors concerning their consideration of matters not in evidence and the effect thereof on their verdict, such cases are not, in the opinion of this Court, authority for interrogation of the jury as to whether or not an item admitted into evidence was considered by the jury and, if so, the effect of such consideration on the verdict. It is, therefore,

Ordered and adjudged that the Motion for Rehearing on Order Granting a New Trial be and is hereby denied.